UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN JOHNSON, a single individual,

　　　　　　　Plaintiff,

　　v.

CITY OF BELLEVUE, PATRICIA ADKISON, an individual, MARK TOMLINSON, an individual, MICHAEL CHIU, an individual, and JASON DEANER, an individual,

　　　　　　　Defendants.

CASE NO. C05-1070C

ORDER

I.　INTRODUCTION

This matter has come before the Court on Defendant City of Bellevue's motion for summary judgment dismissing Plaintiff's claims with prejudice. (Dkt. No. 21.) Having carefully considered the papers filed by the parties in support of and in opposition to the motion, the Court has determined that no oral argument shall be necessary. For the reasons that follow, the motion is GRANTED.

II.　BACKGROUND

Plaintiff's claims against Defendant City of Bellevue ("Bellevue") arise out of an incident that occurred on March 7, 2002. The undisputed facts are as follows.

ORDER – 1

On March 7, 2002, Plaintiff placed a call to Karen Nowitski,[1] the area representative for the Washington Federation of State Employees Union. (Johnson Decl. 1:19–21.) He told her that he was "sad and anxious" about a job-related hearing that was to occur in ninety days. (*Id*. 1:21–22.) The matter had already been pending for about two months and he told her he didn't know if he could "take this" for "another ninety days." (*Id*. 1:24–26.)

Plaintiff, a former crisis counselor himself, concedes that he may have said something that could reasonably have caused Ms. Nowitski "a layperson when it came to matters of mental health[, to] jump to conclusions from the sort of innocuous thing I had just said." (*Id*. 2:2–5.)

While Plaintiff was on the phone with Ms. Nowitski, she signalled one of her co-workers to call the Bellevue Police and ask them to do a "wellness check" on Plaintiff. The portion of the police incident report reflecting the information relayed in the call is as follows:

> SUBJ NAME IS STEVEN JOHNSON
>
> HE IS ON PHONE W/ANOTHER PERSON IN RP'S OFFICE UPSET OVER AN EMPLOYMENT ISSUE
>
> RP CALLING FROM WASHINGTON FEDERATION OF STATE EMPLOYEES
>
> BOBBIE WERNER
>
> . . . .
>
> RP CALLING BACK - DOES NOT THINK HE HAS A GUN - NO WAY TO PROVE THAT - BUT FOR NOW, THEY DON'T THINK HE HAS ONE . . . .
>
> PT IS DISTRAUGHT OVER LOSING HIS JOB AND POSSESSIONS AND HAS LOTS OF PHYSICAL PROBLEMS
>
> . . . .
>
> SAYS THE PT TOLD HER THAT HE WAS GOING TO TAKE PILLS
>
> HE WANTS TO BUT HAS NOT TAKEN THEM - JUST WANTS TO BE ADMITTED TO MENTAL HEALTH

---

[1] The precise spelling of Ms. Nowitski's name is not clear. She is variably referred to as "Nowitzki," and "Workowski" as well as "Nowitski."

ORDER – 2

> PT DOES NOT KNOW PD IS RESPONDING - WILL BE SURPRISED

(Johnson Decl. Ex. C.)

Four Bellevue police officers were dispatched to Johnson's home. After an unsuccessful attempt to call Mr. Johnson on the telephone, the officers entered the apartment. Mr. Johnson's recollection of the ensuing events is that three or four officers "charged" in with their weapons drawn. One of them yelled, "Bellevue Police. Coming in." One rifle had a light affixed to the top and was pointed at Plaintiff, effectively temporarily blinding Plaintiff. A few moments later, Plaintiff could see two other officers pointing handguns at his upper body.

One officer yelled at him to get up against the wall. Another officer approached him, patted him down and handcuffed his wrists together behind his back. The parties dispute whether any of the officers told Plaintiff why they had been sent. (*See* Mot. 3 (stating that "Officer Adkison informed Mr. Johnson why the officers were there and why they had entered with their weapons drawn") *and* Johnson Decl. 3 (stating "[a]t no time did any of the officers tell me why they had been sent" but also stating that one of the officers asked him, "Did you call work today and tell Bobbie you were going to kill yourself").)

While Plaintiff was handcuffed, the officers performed a search of the apartment. Plaintiff recalls that medicine was taken from his cabinets.

After the officers had finished searching the apartment, the handcuffs were removed. Plaintiff was examined by the Bellevue firefighters/EMTs who had also been dispatched to his home. After he was examined, Officer Adkison transported him, at his request, to Overlake Hospital Medical Center.

Plaintiff's complaint asserts causes of action for negligence and violations of his rights under the Washington State Constitution, the Federal Civil Rights Act, 42 U.S.C. § 1983, and the United States Constitution. Defendant's motion for summary judgment seeks to dismiss the complaint in its entirety.

Defendant moves to strike portions of Plaintiff's declaration that could be construed as hearsay. However, as the Court does not consider the challenged portions of the declaration as proof of the matters therein asserted by the speakers, the motion is denied.

ORDER – 3

III.   ANALYSIS

   A.   *Applicable standard of review*

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

   B.   *Plaintiff's federal civil rights claims*

An individual may assert a claim under 42 U.S.C. § 1983 against a person who, "under color of any statute, ordinance, regulation, custom or usage" of state or territorial law denies another person a federal right. 42 U.S.C. § 1983. In the present case, Plaintiff's complaint and response papers together could be read to allege violations of his Fourth, Fifth and Fourteenth Amendment rights — more specifically, a failure to knock and announce, excessive force, unlawful detention, and destruction of evidence.

In order to state a prima facie case under § 1983, Plaintiff must show that 1) Defendant acted under color of state law, and 2) deprived Plaintiff of constitutional or other federally guaranteed rights.

ORDER – 4

*Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). Here, the Court concludes that Plaintiff's rights were not violated. Consequently, the Court need not inquire further into the question of whether Defendant acted under color of state law or whether the doctrine of qualified immunity is applicable.

### 1. Warrantless entry

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Generally, this is understood to prohibit warrantless entry of a residence. *United States v. Cervantes*, 21 F.3d 882, 887 (9th Cir. 2000). However, there are exceptions to this general prohibition. One such exception is for emergencies. The emergency doctrine permits law enforcement officers to enter a residence without a warrant when they are responding to a perceived emergency. *Id.* at 888. The Ninth Circuit expressly approved the emergency doctrine as justified by law enforcement officers' community caretaking function to respond to emergency situations. *Id.* at 889. The analysis of whether the emergency doctrine exception to the warrant requirement contains the following three elements:

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life and property.
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*United States v. Stafford*, 416 F.3d 1068, 1073–74 (9th Cir. 2005). The government bears the burden of demonstrating that these elements are satisfied. *Id.* at 1074.

Under the facts of the present case, the second and third elements are not material issues. Therefore, the question remaining is whether Bellevue had reasonable grounds to believe that an emergency existed requiring immediate assistance for the protection of life and liberty.

Through his declaration and his recitation of the facts, Plaintiff contests the reasonableness of Bellevue's perception that he was in danger of committing suicide. He asserts that he attempted to temper his statements to Ms. Nowitski, reminding her that he had two children, that he didn't own weapons, and that she should not be worried that he would hurt himself. (Johnson Decl. 2:3–10.)

ORDER – 5

However, the Bellevue police were not acting on information received directly from Plaintiff, but on information relayed to Ms. Nowitski's co-worker, Ms. Bobbie Werner, by Ms. Nowitski while she was on the telephone with Plaintiff. Thus, the issue is whether, *based on the information they received from Ms. Werner*, the Bellevue police had reasonable grounds to think that Plaintiff was in danger of committing suicide.

From the portion of the incident report reflecting Ms. Werner's exchange with the police dispatcher, the Court concludes that Bellevue had reasonable grounds to think that Plaintiff might hurt himself. The critical pieces of information relayed by Ms. Werner, perhaps inaccurately, to the Bellevue dispatcher at the time the officers decided to enter Plaintiff's home was that Plaintiff had threatened suicide, was "distraught," and that he had said that he was going to take pills. Even if Plaintiff had not actually told Ms. Nowitski that he was contemplating suicide, by the time the information reached the Bellevue dispatcher, passing first through Ms. Nowitski and then Ms. Werner, it sounded as if he had. In addition, the police had no certain information as to whether Plaintiff had a gun, even though Plaintiff asserts that he told Ms. Nowitski he did not. Under the circumstances as the Bellevue officers believed them to be, it was reasonable for them to think that Plaintiff might have been in imminent danger of hurting himself and that he might react unpredictably or dangerously. Therefore, the Court finds that Bellevue has sustained its burden of showing that the emergency doctrine exception applies to their entry into Plaintiff's residence. Because the emergency doctrine exception applies, Bellevue's entry into Plaintiff's residence did not violate his Fourth Amendment rights. Accordingly, Defendant's motion is granted as to this claim.

    2. *Excessive force*

Plaintiff argues that the Bellevue officers utilized excessive force when they entered his apartment with their weapons drawn. He also claims that the weapons remained pointed at him until well after it was clear he posed no threat to the officers.

Where an excessive force claim brought under 42 U.S.C. § 1983 asserts a violation of Fourth

ORDER – 6

Amendment rights, it is to be analyzed using the "objectively reasonable" standard. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. The factors to be considered include "whether the [individual] poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Id*. Here, the Court has already found as a matter of law that at the time they entered his residence, the Bellevue officers were reasonable in believing on the basis of the information they had, erroneous though it may have later turned out to be, that Plaintiff might have been in imminent danger of hurting himself and that he might react unpredictably or dangerously.

Plaintiff's opposition argues that it should have been clear once the officers had entered his residence that he posed no threat to them. However, Plaintiff's own declaration reflects that he was temporarily stunned into inaction by the shock of the officers' entry, rendering him relatively unresponsive in the first few moments. The declaration also reflects that he paused multiple times before complying with the officers' requests because of his terrified state. Although it is abundantly clear to Plaintiff why he paused, it was not obvious to the Bellevue officers at the time. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly-evolving — about the amount of force that is necessary in a particular situation." *Id*. Given the officers' alleged misapprehension of Plaintiff's circumstances, it was reasonable for them to suppose that Plaintiff's pauses before complying with their requests were due to resistance on his part, rather than fear.

The fact that Plaintiff was wearing only a T-shirt and shorts at the time does not change the analysis. Again, given the officers' alleged misapprehension of the circumstances, it was reasonable for the officers to fear that Plaintiff might have had other objects in his possession with which he could have harmed himself or the officers.

Finally, Plaintiff's own concession that one of the officers stated, "We see you are cooperating

ORDER – 7

1  now. We will take the handcuffs off," supports a finding of reasonableness. The only possible
2  interpretation of this statement is that the officers had handcuffed Plaintiff, believing him to be a threat,
3  but that once it had been ascertained that Plaintiff was not a threat, they removed the handcuffs.

4  From the totality of the circumstances apparent to the officers at the time, the Court finds that the
5  Bellevue officers' use of force was objectively reasonable, as a matter of law.

6  Plaintiff cites to *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002), as support for his
7  argument that the pointing of guns in the present case was unreasonable. However, *Robinson* and all the
8  cases cited therein for support involved facts upon which a court found that there were no apparent
9  dangerous or exigent circumstances at the time the weapons were used. In contrast, in the case at bar,
10 the Court has found that the totality of the circumstances supports a finding that the Bellevue police
11 officers reasonably believed that an exigent circumstance existed.

12 In sum, the Court finds that the Bellevue officers' drawing of their weapons did not constitute
13 excessive force violating Plaintiff's Fourth Amendment rights. Accordingly, Defendant's motion for
14 summary judgment is granted as to this claim.

15 *3.  Unlawful detention*

16 Plaintiff challenges the officers' actions in handcuffing him while they searched his residence. The
17 same "reasonableness" inquiry applies to the issue of whether the Bellevue officers' detention of Plaintiff
18 violated his Fourth Amendment rights. In the present case, because the Court has found that the Bellevue
19 police officers reasonably believed that Plaintiff might pose a threat both to himself and to the officers,
20 the issue is whether this belief justified Plaintiff's detention. The Court concludes that it does.

21 "A seizure becomes unlawful when it is more intrusive than necessary." *Ganwich v. Knapp*, 319
22 F.3d 1115, 1122 (9th Cir. 2003) (citing *Florida v. Royer*, 460 U.S. 491, 504 (1983)). "The scope of a
23 detention must be carefully tailored to its underlying justification." *Id.* Here, Plaintiff's own declaration
24 reflects that as soon as the officers had ascertained that Plaintiff was not a threat, the handcuffs were
25 removed. For this reason, the Court finds that there is no genuine issue of material fact remaining for
26 ORDER – 8

trial on this issue. The officers' detention of Plaintiff was carefully tailored to the exigent circumstances the officers believed existed at the time.

Accordingly, Defendant's motion for summary judgment is granted as to this claim.

### 4. *Destruction of evidence*

Plaintiff alleges that Defendant destroyed the tape of the 911 call made by Ms. Werner and that Defendant "repeatedly misrepresented" to him whether a tape or a transcript of the call existed. Plaintiff claims that these alleged actions violated his Fifth and Fourteenth Amendment rights of due process.

Where evidence is "innocently destroyed according to established policies and procedures," such destruction will not trigger constitutional liability. *Estate of Cartwright v. City of Concord*, 856 F.2d 1437, 1439 (9th Cir. 1988). Here, Defendant has shown that its policy is to retain 911 audio tapes for 90 days unless a hold has been placed on the tape. (Aiken Decl. ¶ 5.) In this case, a hold had been placed on the tape. However, in August 2003, a routine request to release the hold was received by the legal advisor, Kyle Aiken. Ms. Aiken determined, based on the fact that there was no additional information about the necessity of the hold and that in her experience, nobody has ever requested a tape months after the original request, that it was appropriate to recycle the tape. Plaintiff has not offered any evidence suggesting that the tape was not innocently destroyed. Therefore, the Court finds that there is no genuine issue of material fact remaining with respect to the constitutional implications of Bellevue's destruction of the 911 tape. Because the tape was destroyed in a routine manner, its destruction does not trigger constitutional liability.

With respect to Bellevue's refusal to give Plaintiff access to the tape (Johnson Decl. 6:8–17), Bellevue states that it will release a 911 call only (1) to the original caller, (2) to a person authorized by the original caller, or (3) pursuant to a court order. Plaintiff's response papers do not show that he pursued any of these avenues. Therefore, the Court does not find that Bellevue unduly restricted his access to the tape.

Plaintiff's allegations with respect to Defendant's representations about the existence of

ORDER – 9

transcripts appear to be the result of confusion as to whether the record of the call now before the Court is a "transcript." Bellevue explains that while 911 calls are not transcribed except pursuant to a specific request, every 911 call results in a computer record generated contemporaneously with the call by the 911 operator who takes the call. (Aiken Decl. ¶ 3.) This computer record thus contains a summary of the information received by the operator during the call. Thus, Bellevue, in informing Plaintiff that no transcript existed, was telling the truth.

Although the Court finds that Bellevue's actions with respect to Plaintiff's attempts to obtain information about the tape and the transcript did not violate his constitutional rights, the Court does not find Bellevue's less-than-helpful attitude to be particularly commendable. It should have been abundantly clear that Plaintiff was seeking information in the nature of the CAD report that was eventually produced to him by Ms. Aiken. Bellevue had many opportunities at which to suggest to Plaintiff, in the spirit of providing a service to its public, that he could request a copy of the relevant portion of the CAD report.

Despite these reservations about the quality of Bellevue's responses to Plaintiff's requests for the tape and related information, the Court finds as a matter of law that none of Bellevue's actions regarding the tape and related information triggers constitutional liability.

Accordingly, Defendant's motion for summary judgment is granted as to this claim.

\*   \*   \*   \*

Because the Court finds that Plaintiff's constitutional rights were not violated by any of the alleged conduct, the Court need not proceed to the inquiry regarding Bellevue's city policies or to the question of qualified immunity.

C.   *Plaintiff's state constitutional claims*

Plaintiff's response papers did not oppose dismissal of his state constitutional claims. Under Local Rule CR 7(b)(2), a party's failure to oppose a motion may be construed by the Court as an admission that the motion has merit.

Defendant's motion for summary judgment is therefore granted as to Plaintiff's state

ORDER – 10

1  constitutional claims.

2      D.   *Plaintiff's negligence claims*

3      Plaintiff's response papers did not oppose dismissal of his negligence claims.  Defendant's motion

4  for summary judgment is therefore granted as to Plaintiff's negligence claims.  Local Rule CR 7(b)(2).

5  IV.   CONCLUSION

6      In accordance with the foregoing, Defendant's motion for summary judgment is GRANTED.

7  Plaintiff's claims are hereby DISMISSED with prejudice.  Defendant's motion to strike is DENIED.

10      SO ORDERED this <u>30th</u> day of January, 2006.

12                                       *[signature: John C. Coughenour]*
                                     UNITED STATES DISTRICT JUDGE

26  ORDER – 11